UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| BENJAMIN ROGERS, as Personal Representative of the Estate of ASHLEY ROGERS, and BENJAMIN ROGERS, Individually, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CAUSE NO.: 4:15-CV-22-JD-JEM |
| v. | ) ) | |
| QUALITY CARRIERS, INC., and KIMBERLY THIETJE, | ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Renewed Motion to Compel [DE 40], filed by Benjamin Rogers, individually and as personal representative of the Estate of Ashley Rogers, on January 11, 2016; Defendants' Motion to Strike Affidavit of James McDonald [DE 46], filed by Defendants Quality Carriers, Inc., and Kimberly Thietje, on February 4, 2016; and Plaintiffs' Motion to Determine Relevancy Pursuant to 49 FMCSR §40.323 [DE 55], filed by Plaintiffs on March 23, 2016.

### BACKGROUND

On April 30, 2014, this action for wrongful death was filed in Jasper County Circuit Court by Benjamin Rogers, in his individual capacity and on behalf of the Estate of Ashley Rogers. The allegations arise from a collision on December 8, 2013, between Ashley Rogers and Defendant Kimberly Thietje, an employee of Defendant Quality Carriers. On March 10, 2015, Defendants removed the case to this Court.

1

On March 17, 2015, Plaintiffs deposed Thietje. While the case was still pending in state court, Plaintiffs filed a motion to compel discovery, but it was not decided before the case was removed, and Plainitffs re-filed the motion in this Court on March 20, 2015. The Court denied the motion on May 29, 2015, for failure to comply with the requirements of Federal Rule of Civil Procedure 37 and Local Rule 37-1(a). Plaintiffs filed the instant Motion to Compel on January 11, 2016. Defendants filed a response on January 25, 2016, and on February 1, 2016, Plaintiffs filed a reply. On February 4, 2016, Defendants filed the instant Motion to Strike, and Plaintiffs filed a response the same day. No reply has been filed and the time to do so has passed. On March 23, 2016, Plaintiffs filed the instant Motion to Determine Relevancy. Defendants have not responded, and the time to do so has passed.

On March 18, 2016, the Court ordered Defendants to produce for *in camera* inspection the unredacted Quality Distribution, Inc., Incident Investigation, Root Cause and Corrective Action Report that is the subject of the instant Motion to Compel. On March 21, 2016, Defendants provided the incident report as requested.

**ANALYSIS**

In the instant Motion to Compel, Plaintiffs request that the Court compel Defendants to produce the redacted contents of an incident report created immediately following the accident, and to require Defendant Thietje respond to certain questions she previously declined to answer at her deposition, as well as to pay the fees to conduct the additional deposition. In their Motion to Strike, Defendants request that the Court strike content from an affidavit of James McDonald filed as an exhibit to Plaintiffs' reply.

**I.	Motion to Strike**

Defendants argue that the affidavit of James McDonald, attached as an exhibit to Plaintiffs' reply in support of their Motion to Compel, contains inadmissible hearsay statements that should be stricken pursuant to Federal Rule of Civil Procedure 56(c) and Federal Rule of Evidence 801(c). Plaintiffs argue that the Federal Rules of Evidence are not relevant at this stage of the litigation and that Defendants' reliance on Federal Rule of Civil Procedure 56 is misplaced.

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also City of Sterling Heights Gen. Empl. Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2013 WL 566805, at *11 (N.D. Ill. Feb. 13, 2013) ("While Rule 12(f) does not explicitly authorize a motion to strike documents other than pleadings, courts routinely entertain such motions."). In general, motions to strike are disfavored because of the delay they cause to the case. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Accordingly, "a court ordinarily will not strike a matter unless the court can confidently conclude that the portion of the pleading to which the motion is addressed is redundant or is both irrelevant to the subject matter of the litigation and prejudicial to the objecting party." *Fed. Nat'l Mortgage Ass'n v. Cobb*, 738 F. Supp. 1220, 1224 (N.D. Ind. 1990); s*ee also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992); Charles Alan Wright, 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.) ("[T]here appears to be general judicial agreement . . . that [motions to strike] should be denied unless the challenged allegations may cause some form of significant prejudice to one or more of the parties to the action.").

In this case, Defendants do not argue that the affidavit includes scandalous, redundant, or immaterial information, or that it causes them prejudice. Instead, it appears that the result of striking the document – and, indeed, the motion itself – would be to delay the proceedings of the Court. *See Coan v. Nightingale Home Healthcare, Inc.*, No. 1:05-CV-0101-DFH-TAB, 2005 WL 1799454, at *1 n1 (S.D. Ind. June 29, 2005) (denying motion to strike hearsay and noting that "[a]t this preliminary stage and for these preliminary purposes, plaintiffs need not come forward with evidence in a form admissible at trial"). The Court recognizes the concerns about the source of the knowledge of the information reflected in the document and will not consider inappropriate statements, but does not strike the affidavit.

## II. Plaintiffs' Motion to Compel

In their motion to compel, Plaintiffs request that the Court require production of an incident report, and compel responses to deposition questions Thietje was asked regarding her termination from Quality Carriers' employ along with corresponding payment for the costs of a second deposition. Defendants argue that the information sought by Plaintiffs is privileged or undiscoverable. In the later-filed Motion to Determine Relevancy, Plaintiffs also seek leave to obtain information about Plaintiff Thietje's physical and mental condition at the time of the collision, including any related drug or alcohol test results, and seek to depose a non-party who might have that information.

Defendants first argue that Plaintiffs should be estopped from making the arguments in the instant Motion to Compel, since the Court already ruled on the issues therein. Defendants refer to a motion to compel filed by Plaintiffs on March 20, 2015, shortly after Defendants removed the case

from state court. The Court denied the motion for failure to comply with applicable Federal and Local Rules, but did not, as Defendants assert, address the merits of the motion. It was completely appropriate for Plaintiffs to comply with the Rules by attempting to reach resolution of their dispute with Defendants outside of Court, and to file a renewed motion when they could not. Plaintiffs are not estopped from filing the instant Motion to Compel, and their arguments are not barred from consideration.

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. *See* Fed. R. Civ. P. 37(a). A party objecting to the discovery request bears the burden of showing why the request is improper. *McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). The Court has broad discretion when deciding discovery matters. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993)).

    A.    <u>Incident Report</u>

In response to Plaintiffs' request for production of documents, Defendants provided Thietje's employment file, which included a three page, completely redacted document identified as the Quality Incident Investigation, Root Cause, and Corrective Analysis Report. Plaintiffs request that

the Court compel Defendants to provide an unredacted copy of the incident report, which was created following the December 8, 2013, accident at issue in this case. Plaintiffs argue that they are entitled to the information in this document because it may be relevant to the cause of the accident or Thietje's termination from her employment with Quality Carriers. Defendants argue that the redacted portion of the incident report is protected under the attorney work product doctrine, attorney-client privilege, 49 U.S.C. § 504(f), Federal Rule of Evidence 407, and the self-critical analysis doctrine. The Court will consider each argument in turn.

1. *Attorney Work Product*

Defendants argue that the attorney work product doctrine protects the incident report from discovery. Defendants allege that Quality Carriers sent its counsel to the accident scene to assess the situation and collect information, and that Quality Carriers relied on the mental impressions, conclusions, and legal theories of its attorney's assessment to complete the form. Furthermore, Defendants allege that the form was not an ordinary business practice because it was prepared in anticipation of litigation. In response, Plaintiffs claim that the incident report is a normal business document used to assess accidents and that assistance from counsel in preparing the document does not automatically protect the contents from discovery.

Materials created in anticipation of litigation are considered attorney work product and protected by a qualified privilege against discovery. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996); *see also* Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial."). A document is considered "prepared in anticipation of litigation" if it "can fairly be said to have been prepared or obtained *because* of the prospect of litigation." *Logan*, 96 F.3d at 976-77 (citing *Binks*

6

*Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir.1983)). When determining whether a document was prepared in anticipation of litigation, the Court must distinguish between investigative materials created "as a precaution for the 'remote prospect of litigation' and materials prepared because 'some articulable claim, *likely* to lead to litigation . . . ha[s] arisen.'" *Id.* (quoting *Binks Mfg.*, 709 F.2d at 1120). "If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery," and "[t]he fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product." *Binks Mfg.*, 709 F.2d at 1119 (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982)). "Only where the document is primarily concerned with legal assistance does it come within these [work product] privileges." *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981). The privilege is to be strictly construed, and the burden is on the party asserting the privilege to show that the materials were made in anticipation of litigation. *See, e.g., Hamdan v. Ind. Univ. Health N., LLC*, No. 1:13-CV-00195-WTL, 2014 WL 2881551, at *2 (S.D. Ind. June 24, 2014).

When determining whether a document is primarily concerned about litigation, courts consider whether a document is "primarily legal in nature," as contrasted with "[d]ocuments that are created in the ordinary course of business." *Hamdan,* 2014 WL 2881551, at *2 (quotation omitted). In this case, according to an affidavit signed by the Vice President of Safety & Security for Quality Carriers, counsel was retained to report to the scene of the accident, and the Vice President created the incident report after talking to the attorney about the investigation. Defendants admit that other incident reports exist, but argue that those reports differ from the one at issue here because the

7

reports did not indicate that the incidents were under investigation by the legal department and no outside counsel was retained to assist with the investigations. However, the instant incident report form itself was not completed by counsel, and the report does not include any legal theories or legal opinions. Other than a statement that the "how" of the accident remained under investigation, there is no indication that there is anything different about this incident report than any of the others created by Quality Carriers in the course of business.

Defendants also argue that retaining counsel to help investigate the accident was not ordinary, and that the serious nature of the accident significantly increased the likelihood of litigation. However, paying counsel to assist with a routine business practice in response to a fatality does not somehow morph the regular business form into a document primarily concerned with legal assistance. *See Broadnax v. ABF Freight Sys., Inc.*, 180 F.R.D. 343, 346 (N.D. Ill. 1998) ("[H]iring an attorney does not carry the discovery opponent's burden of establishing work product applicability. If the retention of counsel were dispositive, there would be no need for analysis of the work product's doctrine elements in nearly any case. . . . The fact that a death is involved does not change [] course-of-business practices."). Although hiring an attorney to assist in the investigation may not occur for every accident, there is nothing about the incident report itself to indicate that it was not made in the ordinary course of business.

After *in camera* review of the document, the Court concludes that Defendants have failed to establish that the incident report was created in anticipation of litigation rather than in the ordinary course of business, and is not protected by the attorney work product doctrine.

    2.    *Attorney-Client Privilege*

Defendants also argue that attorney-client privilege precludes production of the redacted

portion of the incident report.

"When the basis of federal jurisdiction is diversity, the court applies the state law of attorney-client privilege." *Illiana Surgery and Medical Ctr. v. Hartford Fire Ins. Co.*, No. 2:07-CV-3, 2008 WL 2622 803, at *2 (N.D. Ind. June 30, 2008) (citing Fed. R. Civ. P. 501) (other citations omitted); *see also Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir. 1987) ("Because the basis of our jurisdiction is diversity, we apply the Indiana state law of privilege."). In Indiana, attorneys are not required to testify as to "confidential communications made to them in the course of their professional business, and as to advice given in such cases." Ind. Code § 34-46-3-1. The attorney-client privilege "applies to all communications between the client and his attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities." *Penn Cent. Corp. v. Buchanan*, 712 N.E.2d 508, 515 (Ind. App. 1999). "The attorney-client privilege should be narrowly construed because the privilege may prevent the disclosure of relevant information." *Howard v. Dravet*, 813 N.E.2d 1217, 1222 (Ind. Ct. App. 2004). The party asserting the privilege carries the burden of proving its applicability, and "the privilege must be established as to each document sought." *Id.*

Defendants argue generally that portions of the incident report apply counsel's opinions and mental impressions to facts and therefore include legal advice, mixing in their argument about protection for attorney work product. Defendants supply little beyond conclusory assertions that attorney-client privilege applies because the report was attorney work product. These blanket assertions fail to meet their burden of showing that the narrow attorney-client privilege applies to a business document created by Quality Carriers that does not resemble an attorney-client communication requesting or relaying legal advice. *C.f. Howard*, 813 N.E.2d at 1222 ("[T]he

evaluation letter, which contained legal advice to [the moving party] from its counsel, is protected by the attorney-client privilege because it involved confidential communications.").

###### 3. *Self-Critical Analysis Privilege*

Defendants assert that the incident report is also protected by the self-critical analysis doctrine, without citing any precedential case law regarding the source or existence of this privilege. Plaintiffs argue that the self-critical analysis doctrine does not exist under the common law and a statutory privilege is lacking.

The Seventh Circuit Court of Appeals has not recognized a self-critical analysis privilege. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) ("[A] 'self-critical analysis privilege' [is] a privilege never recognized in this circuit."); *see also Camilotes vs. Resurrection Healthcare*, No. 10 C 366, 2010 WL 3168314, at *1-2 (N.D. Ill. Aug. 9, 2010) (listing cases in the Seventh Circuit that refused to apply or recognize the self-critical analysis privilege). Privileges should not be "lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974); *see also Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 189 (1990). Defendants have not given any reason for this Court to consider expanding the common law to include such a privilege, and it will not do so here.

###### 4. *Department of Transportation Act*

Even if the information is not privileged, Defendants argue that the Department of Transportation Act, 49 U.S.C. § 504(f), bars the incident report from discovery. Plaintiffs argue that section 504(f) is inapplicable.

"[S]tatutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for truth." *Pierce Cty., Wash. v. Guillen*, 537 U.S. 129, 144 (2003) (citing

*Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982)). Section 504(f) specifically precludes certain documents from the discovery process, stating:

> No part of a report of an accident occurring in operations of a motor carrier, motor carrier of migrant workers, or motor private carrier and required by the Secretary, and no part of a report of an investigation of the accident made by the Secretary, may be admitted into evidence or used in a civil action for damages related to a matter mentioned in the report or investigation.

49 U.S.C. § 504(f); *see St. Regis Paper Co. v. United States*, 368 U.S. 208, 218 (1961) (using this statutory language is an example of "when Congress has intended like reports not to be subject to compulsory process").

The incident report was not made by the Secretary of Transportation, and Defendants do not argue that the incident report was required by the Secretary. Defendants have not demonstrated that the statutory privilege covers the incident report. *See, e.g., Sajda v. Brewton*, 265 F.R.D. 334, 341 (N.D. Ind. 2009) ("[Section 504(f)] does not extend to regularly-gathered information that the carrier acquires and uses to fill in the blanks on [a] DOT report.").

        5.     *Federal Rule of Evidence 407*

In conjunction with their assertion of protection under Section 504(f) and the non-existent self-critical analysis privilege, Defendants assert that Federal Rule of Evidence 407 precludes discovery of the incident report because the root cause and corrective action sections of the report are subsequent remedial measures taken as corrective action.

Federal Rule of Civil Procedure 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> – negligence;
> – culpable conduct;

11

> – a defect in a product or its design; or
> – a need for a warning or instruction.
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures

Fed. R. Evid. 407. It does not prohibit information about an accident from being produced in discovery because an entity might choose to take remedial measures on the basis of that report. *See, e.g., Benitez-Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 33 (1st Cir. 1988) (refusing to exclude, in the summary judgment context, a report that "would not have made the event less likely to occur" but "was more an 'internal investigatory report' of the sort not protected by Rule 407") (quotation marks omitted) (listing cases).

Plaintiffs have demonstrated the relevance of the incident report, and despite naming numerous potential privileges, Defendants have not shown that the request is improper or that the document is not discoverable. Accordingly, it must be produced.

### B. Deposition of Defendant Thietje

Plaintiffs seek to compel Defendant Thietje to respond to deposition questions regarding the reason she no longer works for Defendant Quality Carriers and her driver's log. Plaintiffs argue that Defendants did not provide Thietje's driver's log prior to her deposition and led Plaintiffs to believe that they did not have it, and that they should be permitted to question her about this new evidence. They also argue that, because Defendants had the document in the possession prior to the first deposition, Defendants should be required to pay for the deposition. Defendants argue that Plaintiffs failed to obtain leave of Court for taking a second deposition, as required by Federal Rule of Civil Procedure 30(a).

Federal Rule of Civil Procedure 30 governs depositions and provides that "[a] party must

12

obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2): [] if the parties have not stipulated to the deposition and . . . the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A)(ii). Plaintiffs argue that they are now seeking the Court's leave, and that they have not served Defendants with a notice of deposition or otherwise attempted to re-depose Thietje without permission from the Court. The Court agrees that the proposed subjects of the deposition are consistent with the scope of discovery as laid out in Rule 26(B) and will not require Plaintiffs to file a separate Rule 30 motion to obtain permission to take the deposition of Thietje. In their brief, Defendants merely object to the allowance of a second deposition of Thietje and do not object specifically to any particular line of questioning. Defendants are reminded that the Court's rulings herein about inapplicable privileges may also be relevant to Defendant Thietje, and orders that the deposition may cover the newly-produced driver's log, any other newly-produced evidence, and questions arising out of that evidence, including Thietje's termination.

Plaintiffs argue that Defendants intentionally withheld the driver's log by stating that no log existed for the date of the accident because of a system error. Defendants did eventually provide the log when asked for proof of the system error, and now argue that they provided it as soon as it was discovered. They do not explain why it was not discovered earlier or how the supposed system error was rectified to allow them to access the report two years later. Because the driver's log was properly requested and within the control of Defendants prior to Thietje's first deposition and Defendants have not explained why they failed to provide it when it was initially requested, it is appropriate for them to cover the costs for Plaintiffs to re-depose Thietje about that information.

    C.    <u>Drug and Alcohol Testing and Related Deposition</u>

13

Plaintiffs seek to take the deposition of Mr. Taylor, the owner of the vehicle driven by Defendant Thietje on the day of the accident, to learn about what he knows about her physical condition at the time of the accident and her termination by Defendant Quality Carriers. Plaintiffs assert that Defendants have indicated that they will move to quash his deposition, so, Plaintiffs seek to have the Court enter an order finding that Thietje's physical and mental condition at the time of the collision and the results of any post-collision substance testing are relevant to this action.

According to the emails attached to Plaintiffs' Motion, Defendants are asserting that any drug or alcohol test is confidential medical information about which Mr. Taylor cannot testify, and cite to the Federal Motor Carrier Safety Regulations as providing the justification for refusing to provide the test results or to allow Mr. Taylor to discuss their existence.

The Federal Motor Carrier Safety Regulations provides that an employer "may release information pertaining to an employee's drug or alcohol test without the employee's consent in certain legal proceedings," including a "civil action resulting from an employee's performance of safety-sensitive duties, in which a court of competent jurisdiction determines that the drug or alcohol test information sought is relevant to the case and issues an order directing the employer to produce the information." 49 C.F.R. § 40.323(a)(2). This case is the type of situation explicitly contemplated by the Regulations.[1] The Court concludes that any information about Thietje's physical and mental condition at the time of the collusion, including drug and/or alcohol testing undergone by Thietje in the days immediately before and after the incident, is relevant to this case and must immediately be produced to the parties in this litigation (and not to anyone else). *See, e.g.,*

---

[1]Although neither party brings up the Health Insurance Portability and Accountability Act (HIPAA), given the disputes over discovery in this case, the Court also reminds the parties of the requirements of the Act regarding disclosure of protected health information of an individual either with or without the authorization of the individual in certain situations covered in 45 C.F.R. § 164.512.

*Bowen v. Galbreath*, No. 3:09CV165, 2009 WL 4405812, at *1 (W.D.N.C. Nov. 25, 2009). The parties may use the information for the purposes of this litigation only, and any person it is shown to as part of this litigation must be bound to observe its confidentiality.

The role of Mr. Taylor is not entirely apparent to the Court, and it is not clear whether he would be considered an employer or otherwise covered by the Regulations. To the extent he is, he is also ordered to produce any drug and/or alcohol test information to the parties in this litigation. If he is not, and as he is not a party to the action, any drug and/or alcohol test results cannot be shown to him. However, his knowledge about Ms. Thietje's physical and mental state on the days surrounding the accident is certainly relevant to the case and therefore discoverable, and his knowledge about whether or not there was any drug or alcohol testing done is likewise relevant and discoverable. Accordingly, any motion to quash his deposition on the grounds advanced by Defendants in their communications provided to the Court by Plaintiffs is unlikely to be successful.

## CONCLUSION

For the foregoing reasons, the Court hereby:

(1) **DENIES** Defendants' Motion to Strike Affidavit of James McDonald [DE 46];

(2) **GRANTS** Plaintiffs' Renewed Motion to Compel [DE 41]. The Court **ORDERS** Defendant Thietje to attend a deposition by Plaintiffs, costs borne by Defendants, and to respond to deposition questions pertaining to her driver's log, her employment termination, and other questions arising out of discovery provided by Defendants since her first deposition. The Court further **ORDERS** Defendants to serve on Plaintiffs, on or before **June 27, 2016**, the unredacted Quality Distribution, Inc. Incident Investigation, Root Cause and Corrective Action Report in its entirety;

(3) **GRANTS** Plaintiffs' Motion to Determine Relevancy Pursuant to 49 FMCSR §40.323 [DE 55] and **ORDERS** Defendants to serve on Plaintiffs, on or before **June 27, 2016**, any and all documents regarding the physical and mental condition of Defendant Thietje at the time of the collision, including drug and/or alcohol testing undergone by Thietje in the days immediately before and after the incident, subject to the limitations of distribution as described above. The Court further **ORDERS** Defendants to participate in discovery, including depositions, regarding the physical and mental condition of Defendant Thietje in the time surrounding the incident.

Because the motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Accordingly, the Court hereby **ORDERS** Plaintiffs to **FILE**, on or before **June 27, 2016**, an itemization of its costs and fees, including attorney's fees, incurred in making the Motion to Compel, with Defendants to **FILE** a response with the Court to Plaintiffs' request for reasonable expenses incurred in making the instant Motion on or before **July 11, 2016**, and Plaintiffs to file a reply, if any, by **July 18, 2016**.

The Court hereby **DENIES as moot** Plaintiffs' Request for Rulings [DE 61].

SO ORDERED this 21st day of June, 2016.

                                                s/ John E. Martin
                                                MAGISTRATE JUDGE JOHN E. MARTIN
                                                UNITED STATES DISTRICT COURT