**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE**

| | |
|---|---|
| BENJAMIN ROGERS, individually and as personal representative of THE ESTATE OF ASHLEY ROGERS,<br><br>Plaintiff,<br><br>vs.<br><br>QUALITY CARRIERS, INC., and KIMBERLY THIETJE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CAUSE NO. 4:15-cv-22<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>OPINION AND ORDER</u>

This matter is before the Court on the: (1) Defendants' Motion for Summary Judgment, filed by Defendants, Quality Carriers, Inc. and Kimberly Thietje, on February 8, 2017 (DE #101); (2) Plaintiff's Motion for Partial Summary Judgment, filed by Plaintiff, Benjamin Rogers, as personal representative of the estate of Ashley Rogers, and individually, on February 28, 2017 (DE #105); (3) Motion to Exclude Opinion Testimony of Nick Tumbas, Trooper Elwood, and Dr. E. Allen Griggs, filed by Defendants, Quality Carriers, Inc. and Kimberly Thietje, on March 2, 2017 (DE #109); and (4) Belated Motion for Oral Argument Pursuant to Local Rule 7.5, filed by Defendants, Quality Carriers, Inc. and Kimberly Thietje, on June 26, 2017 (DE #124).

For the reasons set forth below, Defendants' Motion for

Summary Judgment (DE #101) is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to the claims of negligent infliction of emotional distress and punitive damages, which are **DISMISSED WITH PREJUDICE**. It is **DENIED** as to causation. Plaintiff's Motion for Partial Summary Judgment (DE #105) is **DENIED**. The Motion to Exclude Opinion Testimony (DE #109) is **DENIED**. The Motion for Oral Argument (DE #124) is also **DENIED**.

BACKGROUND

Plaintiff filed this wrongful death suit against Defendant, Quality Carriers, Inc. ("Quality Carriers") and its employee, Kimberly Thietje ("Thietje"), in state court in 2014. Defendants removed the case to this Court on March 10, 2015. The case stems from a car crash in December 2013, on southbound I-65, which killed Ashley Rogers ("Rogers"). The Jeep driven by Rogers was struck multiple times, by multiple vehicles, including being struck by the tractor-trailer driven by Thietje. The parties have put forth different versions of how the accident occurred, and where Ashley Rogers was during the impacts.

On February 9, 2017, Defendants filed a motion for summary judgment, arguing that Plaintiff failed to produce sufficient evidence to create a genuine issue of material fact that Thietje's wrongful act or omission was the responsible cause of Rogers' death. (DE #101.) Plaintiff filed a response in opposition on March 1, 2017 (DE #107), and Defendants filed a reply (DE #110).

On February 28, 2017, Plaintiff filed a motion for partial summary judgment arguing no genuine issues of material fact exist so that a jury could find that Rogers was struck by an unknown non-party. (DE #105.) Defendants filed a response on March 28, 2017 (DE #112), and Plaintiff filed a reply on April 10, 2017 (DE #113).

On March 2, 2017, Defendants filed the instant motion to exclude opinion testimony of Plaintiff's experts, Nick Tumbas, Trooper Elwood, and Dr. E. Allen Griggs. (DE #109.) Plaintiff filed an opposition on March 16, 2017. (DE #111.)

Finally, Defendants filed a motion for oral argument on June 26, 2017. (DE #124.) Plaintiff filed a response in opposition on June 26, 2017. (DE #125).

As such, all four motions have been fully briefed and are ripe for adjudication.

DISCUSSION

Motion for Oral Argument

At the outset, the Court will address Defendants' Motion for Oral Argument as to the motion to exclude testimony and motion for summary judgment. (DE #124.) Pursuant to Local Rule 7-5., the Court may "grant or deny a request for oral argument or an evidentiary hearing in its discretion." N.D. Ind. L.R. 7-5.(c)(1). Here, the parties' memoranda have sufficiently apprised the Court of the issues at hand, and the Court does not believe that oral argument is necessary. Therefore, the Court denies Defendants'

Motion for Oral Argument (DE #124), and turns to the merits of the motions.

<u>Motion to Exclude Opinion Testimony of Nick Tumbas, Trooper Elwood, and Dr. E. Allen Griggs</u>

While Defendants entitle this motion as one to exclude "opinion testimony," they cite to Federal Rule of Evidence Rule 702, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), in applying the legal standard for the admissibility of expert testimony. Additionally, the two main cases they rely upon, *Owens v. Ford Motor Co.*, 297 F.Supp.2d 1099, 1105 (S.D. Ind. 2003), and *Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir. 1999), both analyze the admissibility of expert testimony under Rule 702 and the guiding principles in *Daubert.*

Federal Rule of Evidence 702, which governs expert testimony, provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is a product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

4

F.R.E. 702. In addition, in *Daubert*, the Supreme Court fashioned a two-prong test of admissibility for evidence based on the "scientific knowledge" mentioned in Rule 702. *Daubert,* 509 U.S. at 592. To be admissible, evidence must be both relevant and reliable. *Id*. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (noting the objective of court's gatekeeping requirement is to ensure reliability and relevancy of expert testimony).

Under the reliability prong, scientific evidence must be reliable in the sense that the expert's testimony must present genuine scientific knowledge. *Daubert*, 509 U.S. at 592-93; *Deimer v. Cincinnati Sub-Zero Prods. Inc.*, 58 F.3d 341, 344 (7th Cir. 1995). Generally, the expert witness must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the witness's field. *Kumho*, 526 U.S. at 152. Specifically, a court may, but is not required to, consider a nonexclusive list of four factors in assessing reliability: (1) whether the expert's theories and techniques can be verified by the scientific method through testing; (2) whether the theories and techniques have been subjected to peer review and publication; (3) whether the theories and techniques have been evaluated for their potential rate of error; and (4) whether the theories and techniques have been generally accepted by the relevant scientific

community.  *Daubert*, 509 U.S. at 593-94.

Under the relevance prong, the testimony must assist the trier of fact to understand the evidence in the sense that it is relevant to or "fits" the facts of the case.  *Daubert*, 509 U.S. at 591; *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).  In other words, the testimony must be such that the jury can apply it in a meaningful way to the facts at hand.  This "fit" analysis essentially represents an inquiry similar to if not indistinguishable from the basic evidentiary inquiries into whether evidence is relevant and, if so, whether its probative value is nonetheless substantially outweighed by, among others, the danger of unfair prejudice and jury confusion.  *See Daubert*, 509 U.S. at 595; *Ayers v. Robinson*, 887 F. Supp. 1049, 1058-59 (N.D. Ill. 1995).

Here, Defendants move to strike the testimony of three witnesses - Nick Tumbas, Trooper Danielle Elwood, and Dr. E. Allen Griggs.  Ultimately, it comes down to this: Plaintiff's theory of the case is that Rogers was either inside or near her vehicle when Thietje's truck struck Rogers' Jeep.  On the other hand, Defendants' theory of the case is that Rogers was struck as a pedestrian by a vehicle other than Thietje's.  Thus, Defendants are trying to bar Plaintiff's experts from opining that Rogers was near or inside her vehicle at the time of impact with Thietje's truck.  This Court finds the expert testimony and opinions of Tumbas,

Elwood, and Dr. Griggs both reliable and relevant.

A.  <u>Nick Tumbas</u>

Nick Tumbas is Plaintiff's accident reconstruction expert.  In his accident reconstruction report (DE #112-4), Tumbas lists the case materials and field observations he used in reaching his opinions – which include, *inter alia*, the officer's crash reports, Trooper Elwood's traffic crash reconstruction, written statements by witnesses, photographs, phone records, weather data, diagnostic data for Thietje's tractor, electronic data for Zdzislaw Karpik's tractor-trailer (another tractor-trailer that impacted Rogers' Jeep), answers to interrogatories, medical records, the coroner's report, deposition testimony, and his personal examinations of the accident site and Rogers' vehicle.  (*Id.* at 3-4.)  As such, he collected facts and data, analyzed it in accordance with his specialized knowledge, and reached specific conclusions.

There are a number of opinions in Tumbas' report about how the accident occurred, including analysis of road conditions, light conditions, damage sustained to Rogers' vehicle, the initial loss of control, and the impacts that Rogers' vehicle sustained with the other vehicles.  Additionally, Tumbas opines that "Kimberly Thietje's vehicle continued in the right lane without moving to the left or braking.  Her truck impacted the Rogers' vehicle with Ashley in or near the vehicle at the time of impact." (*Id.* at 3.)  Tumbas also opines that "Ashley's location when her vehicle was

impacted by Thietje is not known for certain, as stated earlier. .
. Mrs. Rogers is assumed to be near or in her vehicle when the
impact occurred." (*Id.* at 10.)

Defendants argue Tumbas is not "qualified to offer opinions
involving principles of biomechanical engineering or occupant
kinematics." (DE #109 at 14.) Yet, Tumbas does not profess to be
an expert in these areas. He is trained in the field of accident
reconstruction (Tumbas Dep. at 6-9), and is offering opinions about
his conclusions arising from the investigation, based upon his
training and extensive experience in the field of accident
reconstruction.

Defendants also argue that Tumbas did not conduct an
investigation "to determine if Ashley Rogers could have been
ejected or propelled to the interior median barrier wall as a
result of the forces generated in the impact between the Jeep Grand
Cherokee and the Thietje tractor-trailer." (DE #109 at 15.)
Defendants fault Tumbas for not entertaining the hypothesis that
Rogers was struck as a pedestrian by another vehicle. (*Id.*) Yet,
Defendants do not point to any facts Tumbas failed to consider.
There is no witness testimony about where Rogers was when she was
struck, and not one person at the scene testified they saw a
pedestrian or saw Rogers get struck while she was a pedestrian,
walking. (Elwood Dep. at 85-86; Madison Dep. at 77.) There is
nothing improper with Tumbas' investigation, the facts and data he

relied upon, or his methods in this case.

Finally, Defendants argue that Tumbas did not conduct scientific tests to determine the forces acting on Rogers' body, and then concedes "nor could they because no one knew where she was at the point of impact." (DE #109 at 17.) Indeed. No one knew where Rogers' body was at the point of impact. This is the reason testimony like that of Tumbas, giving his expert opinion as to what happened in this complicated sequence of collisions, is helpful and necessary to a jury. Defendants have experts as well that will testify about how they believe the accident happened. It is up to the jury to weigh that expert evidence. *See Smith,* 215 F.3d at 719 ("[t]he question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine.").

The criticisms voiced by Defendants about Tumbas' testimony do not go towards the admissibility of these relevant and reliable opinions, but instead are more appropriate as topics for cross examination. *See Daubert,* 509 U.S. at 596 (recognizing cross-examination and careful jury instructions, not the exclusion of expert testimony, are the preferred methods of dealing with challenged expert testimony); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) ("A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy. If the proposed expert testimony

meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."); *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F.Supp.2d 1148, 1150 (N.D. Ill. 2001) ("The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."). While Defendants may disagree with the some of Tumbas' conclusions, this Court finds his report and testimony is relevant and reliable.

B.   Trooper Danielle Elwood

Trooper Elwood is an accident reconstructionist with the Indiana State Police Department. She investigated the scene two days after the crash, considered environmental conditions, received information on the vehicle inspections, listed service violations of vehicles, considered witness statements, crash mechanics, and reached several conclusions in her report. (DE #112-7 at 8-10.) Elwood concluded the crash involved multiple impacts occurring in close proximity, Thietje's truck impacted Rogers' Jeep, there was no evidence of mechanical failures of any of the vehicles, environmental conditions impacted the crash (light snow was falling), no vehicular recalls had any bearing on the crash, and there could have been visibility issues that contributed to the

10

crash.  (*Id.* at 11.)

While Defendants try to fault Elwood for not holding an engineering degree, biomechanical degree, or kinematics degree, Trooper Elwood is qualified to give an opinion as to her conclusions arising from her technical investigation based upon her qualifications, training, and experience as a State Trooper and accident reconstructionist.   Elwood took a six week course in accident reconstruction. (Elwood Dep., DE #112-6, at 11.) In those classes, she learned how to look in depth at a crash and determine what occurred based upon factual information.   (*Id.* at 12.) Additionally, Trooper Elwood learned by working with other officers in the field.  (*Id.* at 14.)  She has a typical protocol (including walking the scene, gathering her own information first, then talking to other officers, seeing if there are other witnesses, and taking measurements).  (*Id.* 19-21.)  Defendants do not challenge her methods and methodology, but rather lists the many things she did not determine or have an opinion on (including when or how Rogers sustained her fatal injuries, how Rogers' body came to the resting place by the barrier wall, or whether she was struck as a pedestrian).

Trooper Elwood is a trained police accident reconstructionist, and her testimony and report is clearly relevant and reliable to this case.  She has no motive for bias, and collected invaluable data that has been considered and interpreted by other experts in

this case as well. Defendants can explore any issues they have with her testimony on cross-examination. See *Lapsley*, 689 F.3d at 805.

C.    Dr. E. Allen Griggs

Plaintiff also retained Dr. E. Allen Griggs, M.D., J.D., as an expert witness. Dr. Griggs was the medical examiner that performed Rogers' autopsy and he is a coroner for the State of Indiana. Dr. Griggs examined the injuries sustained by Rogers and found them to be more consistent with a body ejected from a vehicle. (Griggs Dep., DE #112-9, at 47.) Yet he admits that her bilateral femoral fractures could have occurred as the result of being struck as a pedestrian. (*Id.* at 51-52.)

Defendants don't question Dr. Griggs' qualifications to determine the cause and manner of death, nor do they argue he used unreliable principles when forming his opinions. Dr. Griggs came to his conclusions as part of his official duties, and is clearly qualified to opine on the cause and manner of a person's death. Rather, Defendants try to point out information he did not have, and things he did not know, during his autopsy. (DE #109 at 6-8.) There are a number of things no one knows with absolute certainty in this case, including, but not limited to: whether Rogers was inside her vehicle at the time of impact with Thietje's truck; if she was in the vehicle, where was she in the Jeep; if she was in the Jeep at the time of impact, was she ejected; how precisely the

Jeep was struck by Thietje's truck; and how exactly Rogers' body arrived at her final resting point. All of these unknown facts are left for the jury to decide, and Dr. Grigg's testimony will assist the jury in their job. Dr. Grigg's opinion that Rogers was likely inside her vehicle is based upon sufficient facts and data that he had available, and is relevant and reliable. Again, Defendants' issues with Dr. Grigg's testimony may be explored on cross-examination.

Defendants cite *Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir. 1999), and *Owens v. Ford Motor Co.*, 297 F.Supp.2d 1099 (S.D. Ind. 2003), in criticizing Plaintiff's experts for not conducting scientific tests. However, *Clark* was a product liability case where the expert opined in a one and a half page report that had the seat belt functioned properly, the plaintiff would have been restrained from impacting the roof and had no serious injuries from the car accident. *Clark*, 192 F.3d at 754. The Court faulted the expert's methodology which was based solely on his belief and assumption without any testing data or research material in the record. *Id.* at 758. In this case, there is no product to test, and the experts at issue used the available data to reach their opinions. Similarly, *Owens* is also distinguishable, because it was a product liability case in which the main issue was whether the air bag fully deployed, and for purposes of the expert analysis, the expert assumed the air bag did not fully deploy. *Owens*, 297

F.Supp.2d at 1107. It is axiomatic that "an expert does not assist the trier of fact in determining whether a product failed if he starts his analysis based upon the assumption that the product failed (the very question that he was called upon to resolve)." *Clark*, 192 F.3d at 757.

In reaching their opinions in this case, which is quite different than a product liability case, Plaintiff's experts have *not* assumed the central fact at issue (whether Thietje's truck caused Rogers' fatal injuries). Rather, they have given opinions based upon their qualifications and expertise about the accident reconstruction (Tumbas and Trooper Elwood), and Rogers' injuries and the likely cause of her death (Dr. Griggs). This type of expert testimony is appropriate. Therefore, the motion to exclude is denied.

## Motions for Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

A party opposing a properly supported summary judgment motion may not rely on allegations or denials in his own pleading, but rather must "marshal and present the court with the evidence" that he contends will prove the case. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Where the parties file cross-motions for summary judgment, the court must consider each motion. *Grabach v. Evans*, 196 F.Supp.2d 746, 747 (N.D. Ind. 2002). With cross-motions for summary judgment, courts "look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to be beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metropolitan Life Ins. Co.*, 123

F.3d 456, 461 (7th Cir. 1997) (citation omitted).  With the cross motions, the Court will construe all facts and inferences from the facts in favor of the party against whom the motion under consideration is made.  *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006).  "It is true that cross-motions for summary judgment do not waive the right to a trial, but this rule does not alter the respective burdens on cross-motions for summary judgment - more particularly here, the responsive burden of a plaintiff who moves for summary judgment and is confronted with a cross-motion for summary judgment.  The motions are treated separately."  *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 504 n. 4 (7th Cir. 2008) (citations omitted).

Undisputed Facts

There are a number of disputed facts in this case.  The Court will try to distill down the multiple briefs, and list the relevant undisputed facts.

The parties all agree that Rogers was killed as a direct and proximate result of the incident that involved multiple vehicles on December 8, 2013, close to mile marker 225.5 on southbound Interstate 65 in Jasper County, Indiana.  Rogers was traveling southbound in her Jeep Grand Cherokee, and Thietje was driving her 2007 Kenworth tractor with a tanker trailer in the course of her employment with Quality Carriers, Inc., on the same route, a little behind and to the north of Rogers' vehicle.

It was nearing evening time (Tumbas Report, DE #112-4, at 2) when Rogers lost control of her vehicle and it struck the bridge wall on the western side of the southbound lanes of I-65 and came to a stop. (Ben Rogers Dep., DE #102-1, at 29-30.) Rogers had been following her husband, Ben Rogers, at the time. (*Id.* at 16.) Ben Rogers saw headlights start to swerve in his mirror, and could see it was the Jeep his wife was driving. (*Id.* at 29.) Ben Rogers pulled over and called his wife. (*Id.* at 41.) He asked her if she was ok, she said yes, and she "said something to [Ben] that alluded that she was potentially outside of the vehicle," so he told her "to either get on the other side of the ditch or back in the vehicle." (*Id.* at 42.) Then, he called 911 to report the accident. (*Id.*) Ben Rogers could not see what was going on with her, and does not know what Ashley did after the phone call. (*Id.* at 126.) Ben Rogers remained in his car, with his minor son.

The parties do agree that Thietje's truck struck Rogers' Jeep. Thietje was traveling approximately 58 miles per hour. (Tumbas Report at 3.) Thietje heard on the CB radio that there was a spin-out on a bridge. (Thietje Dep. at 27.) Thietje testified on the night of the accident, as she came over the hillcrest, she saw a reflection of something in the roadway to the right. (*Id.* at 56-57.) Thietje did not change lanes. (*Id.* at 62.) Thietje testified that the weather and the darkness prevented her from changing lanes. (*Id.* at 65.) Thietje's truck struck Rogers'

vehicle. (*Id.* at 70.) As discussed earlier in this opinion, the parties dispute whether Rogers was inside her vehicle at the time of the collision with the Thietje truck.

Another individual named Dana Niblett f/k/a Dana O'Brien, was driving southbound on I-65 behind Ashley Rogers, and her vehicle also struck the Jeep. (Niblett Dep. at 36.) The parties disagree on whether Rogers' Jeep collided with the Niblett vehicle before or after the collision with Thietje's truck. (DE #112 at 2-3; *see* evidence cited therein). Plaintiff contends the Niblett vehicle struck Rogers' vehicle first; but Defendants believe after being struck by Thietje, Rogers' Jeep was struck by Niblett, then propelled into the travel lanes of southbound I-65 and struck by another vehicle driven by Zdzislaw Karpik. (DE #112 at 2.) No witnesses reported seeing a pedestrian standing in or around the road. (Elwood Dep. at 85-86; Madison Dep. at 77.)

Ben Rogers did not see any vehicles impact his wife's Jeep. (Ben Rogers Dep. at 67.) He saw vehicles going off the road and he recalls seeing a semi in a field, so he called 911 for a second time. (*Id.* at 47.) At some point, a young man came down to check on him and told Ben that someone "was hurt really bad," so Ben decided he would be better off helping. (*Id.* at 49-50.) He backed his car up, grabbed his pack, and started to run up the hill toward the scene of the incident. (*Id.*)

Ben Rogers saw people gathered next to the barrier wall and

ran over there. (Ben Rogers Dep. at 51.) His wife, Ashley, was lying with her head closest to the wall, and her feet closest to the road, perpendicular to the road. (*Id.* at 56-67.) Ben found Ashley covered up with a blanket. (*Id.* at 51, 63.) A nurse told him someone had put a neck brace on her, and they may have put her on a board. (*Id.* at 66, 121.)

The parties agree that as a result of the collisions, Ashley Rogers sustained severe injuries and ultimately died at the hospital. Plaintiff originally filed a complaint alleging Rogers' wrongful death was proximately caused, in whole or in part, by the negligent actions of: Thietje, individually and as an agent or employee of Quality Carriers, Inc.; Zdzislaw Karpik, individually and as an agent or employee of B&B Cartage Company, Inc.; and/or Dana O'Brien. On March 2, 2015, Plaintiff dismissed his claims against B&W Cartage Company, Inc., Zdzislaw Karpik, and Dana O'Brien. On March 10, 2015, Thietje and Quality Carriers filed their notice of removal. (DE #1). On July 20, 2016, Plaintiff filed his second amended complaint for damages. (DE #77.)

<u>Defendants' Motion for Summary Judgment</u>

With Defendants' motion for summary judgment, the Court will construe all facts and inferences from the facts in favor of Plaintiff. *In re United Air Lines, Inc.*, 453 F.3d at 468. However, to show a genuine issue of fact, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the

material facts," and must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quotation omitted) (emphasis in original).

A.   Causation

First, Defendants claim Plaintiff cannot offer any specific facts on causation; therefore, summary judgment is appropriate on the negligence claim. It is well settled that to recover on a negligence claim, a plaintiff must establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 688 (Ind. Ct. App. 2008). "A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim." *Rodriguez v. United States Steel Corp.*, 24 N.E.3d 474, 477 (Ind. Ct. App. 2014) (quotation omitted). Under Indiana law, negligence cases are "rarely appropriate" for summary judgment due to the fact that they are fact sensitive. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004)(quoting *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind. 1996)).

Defendants argue that Plaintiff cannot offer any specific facts to support the allegation that Rogers received her fatal injuries as a result of the impact between her Jeep and Thietje's

truck. (DE #102 at 7.) To the contrary, Plaintiff does point to evidence in the record to support this inference. Trooper Elwood determined that the first vehicle to impact the Jeep was Thietje's truck, and that "[Rogers] was outside of the vehicle during the first impact near the rear portion of it, and during the impact it would have been a substantial hit enough to force or throw her body towards the inside of the roadway." (Elwood Dep. at 86-87.) Trooper Elwood specifically testified, based upon her investigation, that "[t]he force of the red semi coming through and the way it hits and the way that vehicle is, whether she's either in the [driver] seat or she's on the back panel of that, there's enough force that's going to project her across the roadway." (*Id.* at 89.) Moreover, the autopsy found Rogers was in her Jeep at the time she sustained the fatal injuries, and then ejected (Griggs Dep. at 16), and Dr. Griggs testified that, based upon the nature and severity of the injuries and his experience, Rogers' injuries were "more consistent with those of a person within an automobile, rather than, say, being struck as a pedestrian." (Griggs Dep. at 47.) Plaintiff's expert, Nick Tumbas, determined that Thietje's truck "impacted the Rogers vehicle with Ashley in or near the vehicle at the time of impact," that the impact caused the Rogers vehicle and Rogers to travel "along two divergent paths post-impact" and that Rogers "came to rest on the median shoulder near the concrete barrier" and "was injured." (Tumbas Report, DE #112-4

at 3.)

There is competent evidence in the record, including the testimony of Plaintiff's experts, to support a reasonable inference of causation. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 492 n.1 (7th Cir 2010) (at summary judgment, if there is competent evidence on both sides of a factual question, "the non-movant gets the benefit of the doubt"); *Blood v. VH-1 Music First*, 668 F.3d 543, 549 (7th Cir. 2012) ("drawing the line for proximate cause is usually a task for the factfinder."). As the Court noted in *Wright v. General Motors Corp.*, 479 F.2d 52, 54 (7th Cir. 1973), "since there is room for an honest difference of opinion, the issue of proximate causation presents a question of fact for the jury to resolve."

B.    <u>Negligent Infliction of Emotional Distress</u>

Defendants also move for summary judgment on the claim for negligent infliction of emotional distress. The Supreme Court of Indiana recently analyzed the bystander rule for a person who may seek recovery for emotional distress, concluding it should not expand the precedent, and that the requirements, which are questions of law, "appropriately address the various public policy concerns this particular tort implicates." *Clifton v. McCammack*, 43 N.E.3d 213, 219-20 (Ind. 2015). Aside from the relationship and temporal requirements (which the parties concede Ben Rogers meets), there are proximity requirements too: (1) the scene of the incident

must be "essentially as it was at the time of the incident"; (2) the victim must be in "essentially the same condition as immediately following the incident"; and (3) the claimant must not have been informed directly or indirectly of the incident before coming upon the scene. *Id.* at 218-223.

Plaintiff argues that *Clifton* is not controlling, because Rogers was on the scene at all times, and it was evolving while he was there. (DE #108 at 7-9.) Plaintiff seems to be confusing the modified impact rule (which requires a direct physical impact to recover damages for negligent infliction of emotional distress), with the bystander rule. Because Rogers did not incur a direct physical impact, the only route under which he may recover for the negligent infliction of emotional distress is the bystander rule. *See Ross v. Cheema*, 716 N.E.2d 435, 437 (Ind. 1999); *Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989, 997-98 (Ind. 2006). While Plaintiff claims "[t]his is not the sort of situation that requires a *Clifton* analysis" (DE #108 at 8), he cites no case law in support of this bare assertion and offers no legal support for Ben Rogers to recover on his emotional distress claim.

Defendants contend that neither Rogers nor the scene were in essentially the same condition when Ben Rogers walked up to the scene. The evidence in the record shows that witnesses had placed Rogers in a neck brace, covered her with a blanket, she was surrounded by people, she did not have her coat or shoes on, and a

nurse told Ben Rogers she may have been put on a backboard. (Ben Rogers Dep. at 51, 56-57, 63, 66.) Ben Rogers testified in his deposition that when he started to run up the hill, "at that point things had changed. I can't tell you at what point things changed. I just know that at some point what I thought was the Jeep I no longer could see. So the light was out. What I was looking at, that headlight, was gone. So I didn't know where the Jeep was." (Ben Rogers Dep. at 50.) Ben Rogers testified that when he reached his wife, "she had been lying there for a while." (*Id.* at 121.) While Plaintiff claims the changing of her condition, including efforts of good Samaritans to save her "are not and cannot be the types of changes contemplated by a *Clifton* analysis" (DE #108 at 10), he cites to no caselaw whatsoever in support of this contention.

The *Clifton* Court requires that:

> to recover for emotional distress under a bystander theory, a claimant has to view a scene that is essentially as it was at the time of the incident with the victim . . . in essentially the same condition as immediately following the incident . . . [otherwise] a claimaint will not have witnessed the 'gruesome aftermath' . . ."

*Clifton*, 43 N.E.3d at 221 (quotation omitted). "Gruesome aftermath" refers to the "uninterrupted flow of events following closely on the heels of the accident." *Id.* (quoting *Smith v. Toney*, 862 N.E.2d 656, 662 n.3 (Ind. 2007)). As the Court noted,

> This is not to trivialize emotional trauma that occurs after either the scene or a victim's

> condition has materially changed. . . genuine
> emotional distress can certainly occur even after
> the 'gruesome aftermath' of an accident has passed.
> But the important policy reasons undergirding our
> bystander test are key considerations, so we have
> drawn parameters in defining who may recover. . . .
> As we stressed in *Smith*: "'Bystander' claims are
> not meant to compensate every emotional trauma."
> 862 N.E.2d at 663. "Rather they are limited to
> those that arise from the shock of *experiencing* the
> traumatic event." *Id.*

*Clifton*, 43 N.E.3d at 222 (emphasis in original).

In *Clifton*, Ray Clifton and his son Darryl lived together and were very close. Darryl left home on his moped one morning, and shortly after, was struck by a car and suffered fatal injuries. *Id.* at 215. Ray Clifton was home watching television, heard there was a fatal accident with a moped, and feared his son may have been involved. He drove to the scene, and from a distance of about 20–25 feet, saw Darryl's moped, and his body on the ground covered by a white sheet. *Id.* In that case, the Court found although Ray arrived to the scene in a fairly short amount of time after his son's death, he did not experience "the uninterrupted flow of events following the collision" because there were significant changes to the scene and Darryl's body. *Id.* at 222. Similarly, in this case, Rogers' body was not in the same condition (she had a blanket on her, a neck brace, and she may have been on a backboard), and the scene was changed, as other people were present, and other accidents had taken place.

Additionally, Ben Rogers cannot recover for bystander

emotional distress because he fails the third circumstantial factor, that "the claimant must not have been informed of the incident before coming upon the scene" and must not have knowingly exposed themselves to the accident. *Clifton*, 43 N.E.3d at 222. As explained by the Court:

> This circumstantial factor involves a degree of fortuity: it requires a bystander to arrive to an incident unwittingly and bars claims where bystanders knowingly and willingly expose themselves to the scene of an accident. The trigger for the emotional distress must not be some prior knowledge of the incident before arriving to the scene, but rather the happenstance contemporaneous or near-contemporaneous sensory experience of the incident itself. To put it another way, the compensable emotional trauma must be unmediated, and there should be no period of time during which a bystander can brace himself or herself.

*Clifton*, 43 N.E.3d at 222. In *Clifton*, the Court found that Ray Clifton was informed of the incident before arriving to the crash scene (while watching television), and because his emotional distress began as he was watching the news story, he could not recover because he was informed of the incident indirectly before his arrival to the crash site. *Id.* at 222-23.

Similarly, in this case, Ben Rogers was informed of the incident before he arrived at the crash site. Ben Rogers knew that his wife had been involved in some sort of incident due to her telephone call, and then later, a man approached his vehicle and told him that there was an accident and someone had been hurt really badly. (Ben Rogers Dep. at 50.) As a matter of law, he was

26

informed of the incident before his arrival to the crash site. Additionally, Ben Rogers voluntarily left his vehicle and knowingly walked to the accident scene - it cannot be said that he arrived unwittingly.

This Court does not diminish what is certainly horribly real anguish that Ben Rogers suffered; however, "pragmatism demands that the line be drawn somewhere. And our precedent has drawn that line by setting our straightforward limits for recovery under this tort." Summary judgment is warranted on the claim for negligent infliction of emotional distress. *Clifton*, 43 N.E.3d at 223.

C.  <u>Punitive Damages</u>

Plaintiff's second amended complaint alleges Ben Rogers is entitled to punitive damages as a result of Kimberly Thietje's actions. (Sec. Am. Compl. ¶ 28.) He also alleges that "Defendant Thietje's willful and wanton decision to operate her motor vehicle with amphetamines and marijuana metabolites in her body was done with heedless indifference towards the rights and safety of others, and subjected Ashley Rogers and Benjamin Rogers to probable injuries." (*Id.* ¶ 29.) It seems the second amended complaint attempts to state a cause of action for punitive damages under the negligent infliction of emotional distress theory and the wrongful death theory.

Defendants argue that punitive damages are not available to Ben Rogers because: (1) his negligent infliction of emotional

distress claim fails as a matter of law; and (2) punitive damages are not recoverable through the adult wrongful death statute. (DE #102 at 15.) Plaintiff fails to address this argument in his response, and has therefore waived any argument on these points. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) ("because [plaintiff] failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned"); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are deemed waived).

The Indiana Supreme Court has directly ruled that punitive damages are not recoverable under the Indiana Adult Wrongful Death Statute. *See Durham ex rel. Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 763 (Ind. 2001) ("punitive damages are not recoverable under the wrongful death statute."). Moreover, because Ben Rogers' claim for negligent infliction of emotional distress fails as a matter of law, Plaintiff cannot recover punitive damages under that theory either. Therefore, summary judgment on the issue of punitive damages is granted in favor of Defendants.

Plaintiff's Motion for Summary Judgment

Plaintiff argues that it is entitled to summary judgment because Defendants' expert, Dr. Mkandawire, has an unreliable

opinion as to Rogers' final rest position, and that his opinion that Rogers was struck as a pedestrian is speculative and unreliable.

Dr. Mkandawire is a Principal Engineer in Exponent's biomechanics practice (DE #110-1 at 2), and he determined that the final resting position of Rogers was along the interior median barrier wall, just south of the diagonal seam on the second bridge deck, where he believed blood and personal items (a stroller) were depicted in photograph Exhibit 26. (DE #110-2 at 10.) Dr. Mkandawire lists extensive qualifications in his report, the materials he reviewed (including deposition testimony and photographs), and his ejection trajectory analysis. (DE #110-2.)

Plaintiff points out evidence to oppose Dr. Mkandawire's expert opinions including: Trooper Madison testified the photograph taken two days later does not depict the stroller in the same location that it was on the night of the accident (Madison Dep. at 159), Trooper Elwood did not note the presence of blood in her accident reconstruction report (Elwood Dep. at 63), there is no mention in the autopsy of lacerations or skin punctures on Rogers that would cause the pattern of blood loss, and the snow had been plowed by the time the picture was taken (Elwood Dep. at 65).

However, Defendants also have set forth facts upon which Dr. Mkandawire's belief of Rogers' resting spot is based: he considered the deposition testimony of Ben Rogers, Trooper Madison (who

testified that Rogers was found on the inside median barrier wall within four feet of her personal items), Trooper Elwood (Rogers was found along the inside median barrier wall), Nick Tumbas (Rogers was found along the inside median barrier wall near her personal items), and Dan Frittanto (another defense expert who determined Rogers was found on the inside median barrier wall just north of her personal items). (DE #110-2, at 9-13.)  Dr. Mkandawire also reviewed photographs (he believes one shows her blood in the snow where Rogers' body was found) (Mkandawire Dep. at 109), and Dan Frittanto's report (Defendants' accident reconstruction expert), which placed Rogers' final resting position just south of a diagonal seam in the second bridge deck. (Daniel Frittanto Report, at 13-15.)  Dr. Mkandawire's testimony is supported by credible evidence, and is not merely speculative.

Clearly the final resting position of Rogers is a disputed fact in this case.  There are several different theories of where her body came to rest, and there is evidence on both sides of those theories, and the experts on both sides are qualified and followed a proper methodology.  This is a classic question of fact for the jury to decide.  Plaintiff will have the opportunity to challenge Dr. Mkandawire's opinions on cross examination at trial.  *See Lapsley, 689 F.3d at 805; Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000) (failure to consider evidence or flaws in an investigation are for cross examination).  Moreover, only the

jury can decide if the impact with Thietje's truck proximately caused Rogers' fatal injuries.

Dr. Mkandawire relies upon published test results of lateral throw distances in pedestrian accidents in opining that Rogers was not ejected from her vehicle. (DE #110-2 at 10-11.) Additionally, Dr. Mkandawire proposes an alternate theory about how Rogers may have received her injuries. He believes her injuries were consistent with being struck as a pedestrian by a light truck or an SUV in a "wrap-around" type of accident. (Mkandawire Dep. at 165, 134-35.) Plaintiff notes that back in September 2016, the Magistrate Judge in this case granted an unopposed motion to strike affirmative defense number 8, claiming Plaintiff's injuries were caused by unknown non-parties. (DE #87.) Yet the parties have provided no citations or legal arguments to this Court on how the dismissal of the affirmative defense might affect this case, or the ability for Dr. Mkandawire to put forth his alternative theory at trial that Rogers was struck as a pedestrian by another vehicle. This is a motion for summary judgment that is currently pending before the Court. Defendants have marshaled their evidence and shown that there are disputed issues of material fact as to whether the collision with Thietje's truck caused Rogers' injuries, and this renders summary judgment inappropriate. As such, the Court need not address in this order Dr. Mkandawire's alternative theory.

CONCLUSION

For the reasons set forth below, Defendants' Motion for Summary Judgment (DE #101) is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to the claims of negligent infliction of emotional distress and punitive damages, which are **DISMISSED WITH PREJUDICE**. It is **DENIED** as to causation. Plaintiff's Motion for Partial Summary Judgment (DE #105) is **DENIED**. The Motion to Exclude Opinion Testimony (DE #109) is **DENIED**. The Motion for Oral Argument (DE #124) is also **DENIED**.


**DATED: July 11, 2017**              **/s/ RUDY LOZANO, Judge**
                                      **United States District Court**